UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TAJA CAUTHEN**, <br><br> Plaintiff, <br><br> v. <br><br> **DISTRICT OF COLUMBIA**, <br><br> Defendant. | Case No. 18-cv-904 (CRC) |

## MEMORANDUM OPINION

The District of Columbia Fire and Emergency Medical Services Department ("DCFEMS") cashiered Plaintiff Taja Cauthen from its training program, citing repeated violations of its strict attendance policy. Cauthen, however, claims that she was sacked for complaining about sexual harassment she experienced in her male-heavy cadet class and that tardiness was a pretext for the retaliation. Because Cauthen has failed to produce evidence rebutting the DCFEMS's legitimate, non-retaliatory reason for her termination, the Court will enter summary judgment for the District of Columbia.

I.   **Background**

A.  Factual background

The events that gave rise to Ms. Cauthen's suit occurred during her brief stint as a DCFEMS recruit. DCFEMS appointed Cauthen as a probationary Firefighter/Emergency Medical Technician on September 18, 2017. Def.'s Statement of Undisputed Material Facts ("Def.'s SUMF") ¶ 1, ECF No. 38-1.[1] The following month, Cauthen contacted the

---

[1] The Court considers the facts listed in the District's Statement of Undisputed Material Facts to be conceded because Cauthen did not contest them in a competing statement of disputed facts or in her summary judgment opposition, as required by the Federal Rules of Civil

department's Equal Employment Opportunity Office liaison and reported that she was being sexually harassed by two of her fellow cadets. Pl.'s Opp'n, Exh. B ("Pl.'s Interrogs.") ¶¶ 10, 13. Cauthen's mother and neighbor submitted affidavits indicating that Cauthen told them about this harassment at the time it occurred. Pl.'s Opp'n, Exh. A. Following an investigation, the EEOO liaison informed Cauthen that no one had corroborated her allegations of sexual harassment. Pl.'s Interrogs. ¶ 10. Cauthen proceeded to apprise Fire Chief Gregory Dean of the purported harassment, but she was again rebuffed. Id.

Within three weeks of raising her harassment complaint with Chief Dean, Cauthen was reported late for morning line-up three times. Id. ¶ 11. And DCFEMS takes punctuality seriously. The Rules of Conduct for DCFEMS recruits, which Cauthen acknowledged receiving, Def.'s SUMF, Exh. D, state that each recruit "is expected to be ready to work at the established reporting time" and that a recruit "will be considered late if he/she is anywhere other than at line-up and ready to work at the prescribed time," DCFEMS, Firefighter Recruit Training Program: Guidelines and Operating Procedures ("Bulletin 81") § XIV.A (May 2016), Smith Decl. Exh. A, ECF No. 38-2. For a first violation, a recruit receives an "official reprimand." Id. If late again, the recruit "will be placed on administrative leave pending termination." Id. According to the

---

Procedure and this Court's Local Civil Rules. See Fed. R. Civ. P. 56(e)(2); LCvR 7(h). Although Cauthen's Opposition includes a section titled "Plaintiff's Statement of Material Facts in Dispute," it is a barebones recitation of allegations in the complaint without any citations to the record; it does not challenge any of the District's facts or identify any facts in dispute. See Francis v. Acosta, No. 16-cv-763, 2019 WL 1858302, at *6 (D.D.C. Apr. 25, 2019) (treating defendant's facts as uncontested for the purposes of summary judgment because a "counter-narrative" entitled "Plaintiff's Statement of Facts & Material Facts in Dispute" within the opposition did "not challenge [the defendant's] facts or identify facts in dispute, much less material facts in genuine dispute"), aff'd sub nom. Francis v. Scalia, No. 19-5162, 2020 WL 282945 (D.C. Cir. Jan. 8, 2020). This deficiency is especially notable because the Court specifically pointed counsel to the rules of procedure he needed to follow in preparing his summary judgment opposition. See infra Part I.B.

Deputy Fire Chief, this "policy is strictly enforced." Smith Decl. ¶ 7. Indeed, "[r]ecruits are cited for an hour of AWOL if they are even [] a minute late for line-up." Id. ¶ 9.

The record shows that Cauthen first missed line-up on December 20, 2017, but DCFEMS declined to give her an official reprimand as called for by the attendance policy; instead, she was simply "counseled about her tardiness." Def.'s SUMF ¶¶ 8–9. Two weeks later, on January 3, 2018, Cauthen again failed to sign in before line-up and was marked AWOL. Id. ¶ 10. She missed line-up for a third time two days later. Id. ¶ 11. On each occasion, Cauthen signed a report acknowledging that she was late. Id. ¶¶ 8–11; see also id. Exh. E (signed acknowledgment that, on December 20, 2017, Cauthen "missed formation due to [] feeling under the weather in the restroom" despite "report[ing] on the grounds of the training facility at 0600 and not feeling well"); id. Exh. G (signed acknowledgment of receiving an AWOL charge on January 3, 2018); id. Exh. H (signed acknowledgment that, on January 5, 2018, she "missed line up" and "made contact[] to inform someone that [she] would be late th[at] morning"). DCFEMS terminated Cauthen on January 8, 2018, ostensibly due to her violations of the attendance policy.[2] Id. Exh. I (memorandum terminating Cauthen because her "work performance and conduct fail[ed] to demonstrate that [she] m[et] the minimum requirements for continued employment").

B. Procedural History

Cauthen filed this suit in April 2018 alleging that DCFEMS violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the District of Columbia Human

---

[2] Despite acknowledging the violations at the time, Cauthen disputes these facts in a filing that she herself submitted directly to the Court after the close of discovery. For reasons it will explain below, the Court may not consider this submission as part of the summary judgment record. See infra Part III.

Rights Act ("DCHRA"), D.C. Code § 2-1402.11, by firing her in retaliation for reporting sexual harassment. Am. Compl. ¶¶ 20–27. After some initial complications related to naming the proper defendant,[3] the Court entered a scheduling order giving the parties six months to complete discovery. See Order (Jan. 19, 2019), ECF No. 19. A month later, Cauthen's original lawyer withdrew from the case following his suspension from practice, and his replacement stepped aside for Cauthen's third (and current) counsel two months after that. Following several extensions of the discovery deadline—owing largely to Cauthen's delay in responding to the District's interrogatories and producing her medical records—the Court set summary judgment briefing to commence on January 31, 2020.

A week before the District's summary judgment motion was due, Cauthen's attorney filed a motion to withdraw. ECF No. 36. Counsel indicated in the motion that he wanted off the case because he had accepted an in-house counsel position and was winding down his law practice. He sought to assure the Court, however, that Cauthen was aware of the pending summary judgment briefing deadlines and that he had advised her to find new counsel. He added that Cauthen consented to his withdrawal. On the day the District filed its summary judgment motion, Cauthen filed a handwritten motion to appear *pro se*. ECF No. 37. The Court immediately scheduled a hearing and later stayed summary judgment briefing. See Minute

---

[3] Cauthen initially sued DCFEMS itself, but the department "is not the type of independent corporate body that has the authority to sue or be sued." DCFEMS's Mot. to Dismiss 3 (quoting Hamilton v. District of Columbia, 720 F. Supp. 2d 102, 108 (D.D.C. 2010)), ECF No. 8. So, Cauthen amended her Complaint to name the District of Columbia and Muriel Bowser, in her official capacity as Mayor of the District. See Am. Compl. 1. Mayor Bowser moved to dismiss the claims against her because "[t]here is no . . . need to bring official-capacity actions against local government officials, for . . . local government units can be sued directly for damages or injunctive relief." Bowser's Mot. to Dismiss 3 (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)), ECF No. 14. The Court granted Mayor Bowser's motion, which left the parties as they appear now: Cauthen v. District of Columbia.

Order (Jan. 31, 2020); see also Minute Order (Feb. 10, 2020) (continuing the hearing until February 21 and staying the summary judgment schedule).

Although summary judgment briefing was stayed and the Court had not yet acted on counsel's motion to withdraw, Cauthen herself filed a series of documents in response to the District's summary judgment motion. See ECF Nos. 39–42. In one of these filings, titled "Amended Judicial Notice," Cauthen disputes that she was late to line-up on the occasions detailed by the District and contends that she acknowledged the violations "under distress." Am. Judicial Notice ¶ 3, ECF No. 42. Specifically, on December 20, Cauthen says that she arrived at the line-up on time although she wasn't feeling well. Id. ¶ 5. On January 3, she insists that she was on time but was prevented from signing in by her superiors. Id. On the final date, January 5, she admits calling ahead to say she may be late but says that she nonetheless arrived on time. Id. She also disputes that she received the policy manual containing the department's attendance rules and maintains that she acknowledged receiving it only because she was instructed to do so by superiors. Id. ¶ 4.

At the hearing on the motion to withdraw, the Court drew plaintiff's counsel's attention to Model Rule of Professional Conduct 1.16(b)(1)—which permits withdrawal, in the absence of some other good cause, only if it "can be accomplished without material adverse effect on the interests of the client"—and asked counsel whether he believed his withdrawal on the eve of summary judgment briefing met that standard. Mot. to Withdraw Hr'g Tr. 5:6–6:10, 6:21–7:8 (Feb. 21, 2020) (rough). [4] After pondering the question, counsel withdrew his motion and agreed

---

[4] Out of concern that the discussion may have raised attorney-client communications, the Court asked defense counsel to step out of the courtroom during a portion of the colloquy on the motion to withdraw. See Mot. to Withdraw Hr'g Tr. 4:18–9:18. Because the statements described above—and their context—do not reflect attorney-client communication, the Court

to continue his representation through summary judgment.  Id. at 7:9–16, 9:20–10:2.  As a result, the Court denied Cauthen's motion to proceed *pro se* as moot.  Minute Order (Feb. 21, 2020). Addressing the materials that Cauthen had filed herself, the Court made clear at the hearing that it would not consider the filings, but advised counsel that he would have "an opportunity to file an opposition where [he] can make all these same arguments and . . . present any evidence, [which] could include an affidavit [] or declaration from Ms. Cauthen containing all of the factual assertions" that she had made in the filings.  Id. at 14:3–14.  The Court then directed counsel to the specific rules of procedure he needed to follow in order to properly oppose summary judgment.  Id. at 14:15–18.  To ensure that counsel had enough time to prepare the opposition and to supplement the summary judgment record, the Court granted Cauthen an additional thirty days to respond to the District's pending motion.  Id. at 19:6–19.

Cauthen's attorney timely filed the opposition, and the District replied.  The summary judgment motion is now ripe for the Court's consideration.

## II.  Legal Standards

A court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" only when a reasonable fact-finder could find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  And a fact is "material" only if it can affect the outcome of litigation.  Id.  Non-material factual disputes are insufficient to prevent the Court from granting summary judgment.  Id.  In determining whether summary judgment is

---

will make those portions of the transcript public.  See id. at 5:6–6:10, 6:21–9:18 (portions of the transcript from the closed courtroom that do not potentially reveal attorney-client communications).  The following portions shall remain sealed:  Id. at 4:18–5:5, 6:11–6:20.

appropriate, the Court must review the "[u]nderlying facts and inferences . . . in the light most favorable to the non-moving party." Id.  The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and identifying portions of the record that it believes "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Once the movant has demonstrated that a material fact cannot be disputed, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

The non-moving party may oppose summary judgment using "any of the kinds of evidentiary materials listed in Rule 56(c)." Celotex Corp., 477 U.S. at 324.  This evidence includes materials found in the record, such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  The Court may not make credibility determinations or weigh the evidence; the evidence must be analyzed in the light most favorable to the nonmoving party, with all justifiable inferences drawn in her favor. Anderson, 477 U.S. at 255.  "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available." Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009) (citation omitted).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).  "Mere unsupported allegations or denials," alone, are insufficient to defeat summary judgment. Celotex Corp., 477 U.S. at 324.  Summary judgment, therefore, is appropriate when the non-moving party fails to provide

"evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252.

## III. Analysis

Cauthen alleges that she was unlawfully fired by DCFEMS in retaliation for complaining about sexual harassment she experienced while training to be a firefighter and EMT. Am. Compl. ¶¶ 20–27.[5] She raises these allegations under both Title VII and the DCHRA. When a plaintiff does so, "courts generally evaluate the claims under Title VII jurisprudence." Thomas v. District of Columbia, 209 F. Supp. 3d 200, 204 (D.D.C. 2016); see also Fed. Nat'l Mortg. Ass'n, 165 F.3d 69, 72 (D.C. Cir. 1999) (applying the same test for violations of the DCHRA as would apply to violations of Title VII due to the "substantial similarity" between the two laws). To prove her retaliation claim, Cauthen must establish that (1) she opposed an unlawful employment practice; (2) her employer took a materially adverse personnel action against her; and (3) a causal connection existed between the two. McGrath v. Clinton, 666 F.3d 1377, 1380 (D.C. Cir. 2012); accord Howard Univ. v. Green, 652 A.2d 41, 45 (D.C.1994).[6]

---

[5] Although Cauthen's opposition to summary judgment implies that she has raised both discrimination and retaliation claims, see Pl.'s Opp'n 3–5, she has in fact only alleged unlawful retaliation, Am. Compl. ¶¶ 20–27.

[6] Title VII also requires—before a complaint may be filed in court—that a "charge . . . be filed" with the District's Office of Human Rights and the federal Equal Employment Opportunity Commission "by or on behalf of a person claiming to be aggrieved" within 180 days "after the alleged unlawful employment practice occur[s]." 42 U.S.C. § 2000e–5(b), (c), (e)(1). Cauthen suggests that she filed an EEOC complaint related to the sexual harassment, Pl.'s Interrogs. ¶ 10, but there is no indication in the summary judgment record that she filed a claim of retaliation. In any case, the District did not raise this issue as a ground for dismissal. Because this exhaustion requirement is a "mandatory claim-processing rule subject to forfeiture," not "a jurisdictional prescription," Fort Bend Cty. v. Davis, 139 S. Ct. 1843, 1851 (2019), the District has forfeited this argument by not raising it and the Court will proceed to the merits.

At summary judgment, courts evaluate retaliation claims using the familiar burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1972). Durant v. District of Columbia, 875 F.3d 685 (2017); see also MacFarland v. Geo. Wash. Hosp., 935 A.2d 337, 346 (D.C. 2007) (applying McDonnell Douglas to claims under the DCHRA). "Under this formula, an employee must first make out a prima facie case of retaliation." Morris v. McCarthy, 825 F.3d 658, 668 (D.C. Cir. 2016) (citations omitted). "The employer must then come forward with a legitimate, nondiscriminatory or non-retaliatory reason for the challenged action." Id. Once the employer provides evidence of a legitimate, non-retaliatory reason, the Court "need not—and should not—decide whether the plaintiff actually made out a prima facie case." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). It should instead focus the analysis on whether the employee can meet her burden to show that the employer's explanation is a pretext for discrimination or retaliation. Id.

But, "Brady does not pretermit serious deliberation at the second prong" because a "rush to the third prong may deprive the employee of McDonnell Douglas's unrebutted presumption of discrimination created by the prima facie case." Figueroa v. Pompeo, 923 F.3d 1078, 1087 (D.C. Cir. 2019). The D.C. Circuit has set out several factors that are "paramount in the analysis" of the second prong "for most cases." Id. A court must consider "(1) whether the employer has 'produce[d] evidence that a factfinder may consider at trial (or a summary judgment proceeding);' (2) whether that evidence is sufficient to permit a reasonable jury 'to find that the employer's action was motivated by a non-[retaliatory] reason;' (3) whether the proffered, non-[retaliatory] reason is 'facially credible in light of the proffered evidence;' and (4) whether the evidence 'present[s] a clear and reasonably specific explanation.'" Kirkland v. McAleenan, No.

9

13-cv-194, 2019 WL 7067046, at *14 (D.D.C. Dec. 23, 2019) (quoting Figueroa, 923 F.3d at 1087–88 (internal quotations and citations omitted)).

The District has met its burden here. It proffers that Cauthen was terminated for being tardy three times within a two-week period. As proof, the District has provided declarations and DCFEMS records showing that Cauthen acknowledged being late on the days in question. Def.'s SUMF ¶¶ 8–11; see also id. Exhs. E, G, H. The District also submitted the policy manual governing the conduct of recruits like Cauthen, which specifically states that termination is the consequence for being late twice. Bulletin 81 § XIV.A. This competent evidence is sufficient to permit a reasonable jury to conclude that the DCFEMS's motivation was non-retaliatory, is facially credible, and is "clear and reasonably specific" enough to have provided Cauthen "with a full and fair opportunity to attack the explanation as pretextual." Figueroa, 923 F.3d at 1087–88 (quoting Lanphear v. Prokop, 703 F.2d 1311, 1316 (D.C. Cir. 1983) (internal quotation omitted); Segar v. Smith, 738 F.2d 1249, 1269 n.13 (D.C. Cir. 1984)).

Because the District has proffered a legitimate, non-retaliatory reason for Cauthen's termination, the burden shifts back to Cauthen to "produce sufficient evidence for a jury to reasonably conclude" that the District's proffered reason was pretextual and that DCFEMS intentionally discriminated against her in retaliation for reporting harassment by her fellow cadets. Brady, 520 F.3d at 495. In other words, Cauthen's evidence "must show *both* that the reason [for her termination] was false, *and* that discrimination was the real reason." Aka v. Washington Hosp. Center, 156 F.3d 1284, 1290 n. 4 (D.C. Cir. 1998) (emphasis in original).

She has not met that burden. To rebut the District's legitimate, non-retaliatory reason for her termination, Cauthen's summary judgment opposition relies on two pieces of evidence: (1) her verified interrogatory responses, which describe her reports of harassment, and (2) affidavits

10

from her neighbor and her mother, which indicate that Cauthen told them about the harassment contemporaneously. Though the interrogatory responses and the affidavits corroborate the harassment and support her allegation that she engaged in protected activity, they do not speak to whether the District's proffered non-retaliatory reason for her termination was pretextual.

The assertions that Cauthen made in her "Amended Judicial Notice" *do* attempt to rebut the District's evidence that she was fired due to her tardiness, but the Court may not consider those statements for purposes of summary judgment. First, as noted above, Cauthen's opposition does not contest the District's Statement of Undisputed Facts, including the facts that she arrived to work late three times and was terminated on that basis. The Court therefore takes those facts as true, despite Cauthen's rebuttals. Second, Cauthen's account of her attendance was not mentioned or cited as evidence in her opposition, even though the Court indicated that it would not consider the filings she had made herself and advised her counsel that he could include a declaration from Ms. Cauthen detailing her factual assertions with his summary judgment opposition. Mot. to Withdraw Hr'g Tr. 14:3-15:5. Counsel submitted other declarations, but not one from Cauthen. Third, because Cauthen's account was not cited in her opposition, the District had no occasion to challenge it in its reply brief. Fourth, even if the summary judgment opposition had relied on the statements in Cauthen's "Amended Judicial Notice," the Court could not have considered them because they are not sworn or signed under penalty of perjury and therefore do not constitute admissible evidence. See Kirkland, 2019 WL 7067046, at *19–20; see Fed. R. Civ. P. 56(c)(1)(A) (a party opposing summary judgment must "cit[e] to particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."). Finally, because counsel withdrew his motion to withdraw, and the Court

thereafter denied Cauthen's motion to proceed *pro se* as moot, Cauthen has always been represented by counsel in this case. She therefore is not entitled to the relaxed procedural standards that *pro se* litigants enjoy. Had she been representing herself, the Court may have been required to consider her statements as part of the summary judgment record notwithstanding the procedural deficiencies. Cf. Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) ("[A] district court errs in failing to consider a pro se litigant's complaint in light of all filings."); but see Hendrick v. FBI, 216 F. Supp. 3d 84, 93 (D.D.C. 2016) ("[W]hen faced with a motion for summary judgment, even a *pro se* plaintiff must comply with the Federal Rules of Civil Procedure and this Court's local rules, including this Court's rules regarding responding to statements of material fact and marshalling record evidence that establishes each element of his claim for relief." (internal citations omitted)).

The Court is not in a position to speculate why Cauthen's account of the three tardiness determinations was not submitted as part of the summary judgment record. Whatever the reason, it is not a part of the record and the Court may not consider it. Cauthen is thus left with her interrogatory responses and the affidavits from her mother and neighbor as evidentiary support for her opposition. As discussed, the affidavits corroborate her reports of harassment but say nothing about the veracity of the District's proffered reason for her termination. The interrogatory responses likewise focus on supporting Cauthen's *prima facie* case—that she engaged in protected activity by reporting sexual harassment—but they too are silent on the issue of pretext.

One fact from Cauthen's interrogatory responses could suggest pretext: She was written-up and terminated within three weeks of reporting the alleged sexual harassment to the Fire Chief. Pl.'s Interrogs. ¶ 11. But, "[w]hile timing can establish a *prima facie* case of retaliation,

dislodging an employer's nonretaliatory explanation as pretextual at the third step of McDonnell Douglas requires 'positive evidence beyond mere proximity.'" Waggel v. Geo. Wash. Univ., No. 18-7181, 2020 WL 2296869, at *7 (D.C. Cir. May 8, 2020) (quoting Minter v. District of Columbia, 809 F.3d 66, 71–72 (D.C. Cir. 2015)).  Accordingly, Cauthen has failed to meet her burden to show that a reasonable juror could find that the District's stated reason for her termination was a pretext for unlawful retaliation.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment.  A separate Order will follow.

CHRISTOPHER R. COOPER
United States District Judge

Date: May 12, 2020